Ladies and gentlemen, the first case on our docket is Gulley v. Auto-Owners from Jackson County. Let's see, we've got Mr. Alexander and Mr. Groge are here. All right. You fellas ready to proceed? Yes, sir. You're up first, counselor. Thank you, sir. May I please call? I'm here on a question concerning automobile policy, and we were in the trial court in Jackson County. Cross motions were filed. Judge Schwartz entered judgment concerning the policy for the defendant, Auto-Owners Insurance Company. My client is Alma Gulley, and the issue is whether Ms. Gulley, at the time of her accident, had an automobile policy with auto-owners that had underinsured motorist coverage, whether it had it at all. Auto-Owners says there was no coverage, and we claim that there is. Your Honors, may I approach the bench to pass out your deck sheets? Rather than having you turn them in the appendix. Thank you. What I have passed out are two of the three pages of the declaration pages of this particular policy, and these pages are the essence of my argument. I say that these declaration pages make the policy ambiguous, and therefore it needs to be interpreted and ruled in favor of my client and coverage. Your Honor, the third page I didn't include, it does not say anything about what we're talking about here. The first page, when you look at it, it says underinsured motorist coverage of $250,000. The second page, when you look at it, it says underinsured motorist coverage, no coverage. My argument is that's confusing as can be, it's ambiguous, and because it's ambiguous, the policy needs to be found in favor of the insured alma mater. Does the record reflect that your client did or did not read both pages? There are approximately four or five pages of her discovery deposition that were referred to and have been referred to by Mr. Doerge in his brief, and in those five pages, she talks about whether she read it or not. I don't know that you can interpret that she did not read it. She relied upon the insurance company who she'd been with for some time and paid her premiums, and like most of us, unless we practice in the law, insurance company law, we don't read the policy, and I would say, Your Honors, that one of the things that Did she pay the premiums? Yes, there's no issue about payment of premiums. So she knew that they went down 500% from one year to another year? Yes, sir. Is that significant at all in this case, the fact that the premiums are grossly different or reduced from one year to another year? Well, whether it's significant or not, I guess it's up to you. In my opinion, what we need to do first of all is look at the four corners of the policy and determine if there's an ambiguity, and if there is, interpret it in favor of the client. The issues on what happened before, this policy was changed throughout. Auto owners change their policy throughout this period of time, and the original, after she reduced it, did not look like this, like these deck pages, and these are the ones that are appropriate for the time period when the automobile accident occurred. Did I answer the question? Yes. I hope I didn't circumvent it. I tried to answer it. And I believe that reading, again, it's my feeling that we need to look at the four corners of the policy, that if we go beyond that, in her testimony, in her discovery deposition, she talks about relying upon the insurance company as most of us would. Well, most of us, I'm not sure about. But that's a point that I need to raise is the Gillen case that I referenced in my brief. The Supreme Court talks about looking at these from the aspect of an ordinary person, and I think that when we practice in this area so heavily that we forget to look at it from that perspective. And when a person receives a policy that's got all the pages to it that have been attached here, and they look at the first page and they see I have underinsured coverage, what more do they need to do? Your Honors, I've tried to keep my argument simple. I think it is related to these two pages. I don't want to concede by the shortness of my argument anything, but I believe that's it unless there's questions. Thank you, Counsel. Thank you. Yes. May I please report, Counsel? Michael Doerf, Jell Farrell, Doerf and Phelps. I represent an auto insurance company. First of all, I don't want to go into detail with regard to statement of facts because you all have that, but I think it's important if you look at it from just the four corners, as Mr. Alexander said, I think what he was doing was really looking at the four corners of the first page. One of the important rules of construction is you've got to interpret the policy as a whole, and if you just look at that first page, which, by the way, was a change that occurred, I think, in December of 2003 on the declaration page. Before that, after she had dropped coverages, that wasn't even on there, so she had gotten like three different declaration pages where that didn't even appear, and it clearly showed that she had no coverage. Now, admittedly, if you look at that first page alone, it would appear confusing, but you have to turn the page. On the first page, it says description of item insured. Well, on the first page, it doesn't even describe what is being insured, and it says symbol slash cost, but there's no symbol slash cost. There's no territory indication. There's no class slash PG, and I'm referring to this column right here. But if you go to the second page, it gives you those things. What is being insured? Well, the Lincoln Town car, and the symbol cost is 11E02, and the territory is 066, which is Williamson County, Illinois. The class PG 018, the coverages, bodily injury, versus premiums. It says no coverage, property damage, no coverage, uninsured, underinsured motors, no coverage, medical payments, no coverage, comprehensive ACV, $50 deductible, $60.60. That's the premium that she paid for this particular policy. And again, just concentrating on the four corners, even if you just look at those two pages, I don't believe that a person can reasonably interpret from those two pages that they have underinsured and underinsured coverage of any amount. But the four corners also includes the policy, and the policy specifically does not have any policy language regarding bodily injury, property damage, uninsured and underinsured medical payments. It doesn't have any of it because there's no coverage for it. If you look at the actual policy language, there is no language regarding any of those coverages. And that is attached to the appellant's brief, the actual policy. So if you just look at the four corners alone, then you would have to say that it would not be a reasonable interpretation that she had uninsured and underinsured coverage. But I don't think it's just a matter of four corners because, you know, you don't interpret a policy like this. This is not a new policy. And this isn't a situation where we have commonly with stacking where you pay for an actual premium for underinsured or underinsured coverage, and the question is, does it stack? She didn't pay for premium in the first place. And she hadn't since at least December 18, 2001. She had not paid any premium. So you can't look at this in a vacuum. This lady had known she had been paying these lower premiums and garaging this vehicle, and then at least three of those deck sheets didn't even have this language that they're claiming is an ambiguity. Three of the in-between deck sheets? Yes, three of the ones. The change occurred on December 18, 2001. Okay, and just... Where she garaged. And so I understand what you're saying then. There was a series of deck sheets that only said no coverage, no coverage, no coverage. Right. It did not have this first part right here. And, you know, this is... Prior to the claim, right? Prior to the claim. And that would have been the ones for beginning 6902, 12902, and 6903 because there were six-month policies. And then in 12903, some genius put this portion in here. And I think if you look at the first page, you can understand why they did it. And it had to do with stacking. If you look below right here, they added this anti-stacking language. And sure, now, these were coverages that she had at one time. But, again, if you look at the columns and you turn the page and then you read the whole policy, I don't think it's a reasonable interpretation that she had uninsured to uninsured coverage. In fact, and to me, there's almost, you know, if you take it out of vacuum, she's the one that caused this change. Now, the agency, you know, we didn't really get into factual issues. You know, the agency is going to say, yeah, she told us to do this. But they're not in this case. That's in her deposition, though, isn't it? It is in her deposition. In other words, she admits that she called the agency. All I did was what the premium was, and that's what I paid. So I think it's clear that she didn't actually read the policy in the deposition. Well, the point I'm asking, she, in her deposition, admits that she called the agency and said, I'm going to garage this vehicle. I don't want to pay insurance on the way to work. Correct. And, you know, the record doesn't reflect the agency's perspective on all this. This is just her. She certainly caused the change. She knew her premiums were going to drop. And, in fact, those next deck sheets she got didn't have this, what I'll refer to as that confusing reference on the first page. And the fact that it's confusing, or by itself, It's confusing. You're saying it's confusing but not ambiguous. I am. I am. I just want to make sure. I'm saying it's not ambiguous because you have to read the policy as a whole. Okay. And that's, you know, as Mr. Alexander said, I mean, the issues are pretty simple in this case. It's pretty straightforward. Any other questions? Thank you, counsel. Thank you. Rebuttal, counsel. Very briefly, the first page says liability coverage and limit sections. It says uninsured motors, 250,000. There are no limits. And the only other thing I would say, Your Honors, is that Judge Schwartz, when he wrote his order of summary judgment, he included a sentence that said, It is unfortunate that the defendant has chosen to draft the contract using the section referenced by plan. I don't understand why they put something like this in if there's not intended to be some coverage. Thank you, fellas, for your argument and brief today. We'll take them at our advisement.